THOMAS ROE, Respondent,  v.  METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 4, 1908.

1. **JURY: Conflicting Statements of Plaintiff.**   It is for the jury to determine whether they will believe or disbelieve a plaintiff's statements in a deposition or those at the trial as they are the sole judges of the credibility of the witness and the weight to be given his testimony.

2. **PERSONAL INJURY: Damages: Permanent Disability: Evidence.**   Evidence reviewed and held to support an instruction submitting the question of permanent injury.

3. **APPELLATE AND TRIAL PRACTICE: Excessive Verdict.** Appellate courts are slow to interfere with verdicts on the grounds of their excess, since that question is addressed to the sound discretion of the trial judge and this discretion must be abused to authorize appellate interference.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune*, Judge.

AFFIRMED.

*John H. Lucas* and *Frank G. Johnson* for appellant.

(1) A verdict of $4,000 is excessive where the only substantial injury was an increased rupture which is entirely cured. Wills v. Railroad, 44 Mo. App. 51; Hall v. Water Co., 48 Mo. App. 356; Ross v. Kansas City, 48 Mo. App. 440; Covell v. Railway, 82 Mo. App. 180; Stoetzele v. Swearingen, 90 Mo. App. 588; Dover v. Railway, 100 Mo. App. 330; Dawson v. Transit Co., 102 Mo. App. 277; Heyde v. Transit Co., 102 Mo. App. 537; Winn v. Railway, 121 Mo. App. 623. (2) Instruction numbered one, given for plaintiff, commanded a higher degree of care than is required by law. Dougherty v. Railroad, 97 Mo. 647; Feary v. Railway, 162 Mo. 105; Magrane v. Railway, 183 Mo. 128; Freeman v. Railway, 95 Mo. App. 94; Gilroy v. Transit Co., 117 Mo. App. 663. (3) Plaintiff's second instruction assumes the disputed fact that the car slowed down at Campbell street. In so doing it is erroneous and prejudicial. Dulaney v. Refining Co., 42 Mo. App. 659; Meriwether v. Railway Co., 45 Mo. App. 528; Walters v. Cox, 67 Mo. App. 299; Plummer v. Milan, 70 Mo. App. 598; Freeman v. Railway, 95 Mo. App. 94. (4) Plaintiff's instruction numbered 6, on the measure of damages, is erroneous, in that it is not supported by evidence of future suffering or permanent injuries and disability. Rodes v. Nevada, 47 Mo. App. 499; Culberson v. Railroad, 50 Mo. App. 556; Evans v. Joplin, 76 Mo. App. 20; Pryor v. Railway, 85 Mo. App. 367; Steinmann v. Transit Co., 116 Mo. App. 673; Smedley v. Railway, 118 Mo. App. 103.

*E. A. Scholer* and *T. J. Madden* for respondent.

The degree of care a carrier owes to its passenger. The use of this language in instructions was approved in the following cases: Mathew v. Railway, 115

Mo. App. 474; Hurley v. Railway, 120 Mo. App. 266; McKinstry v. Transit Co., 108 Mo. App. 17; Fallingham v. Transit Co., 102 Mo. App. 573; Lehner v. Railroad, 110 Mo. App. 220; Fullerton v. Railroad, 84 Mo. App. 498; Redmon v. Railway, 185 Mo. 9.   (2)   Plaintiff's sixth instruction authorized recovery for future suffering and disability without evidence of permanent injuries.   An instruction cannot be deemed erroneous if there be any evidence on which to base it, no matter how slight and inconclusive that evidence may be.   2 Ency. of Pl. & Pr., p. 181; Sawyer v. Drake, 34 Mo. App. 472; Wood v. Railroad, 119 Mo. App. 82; Wilbur v. Railway, 110 Mo. App. 697; Welch v. McAlister, 15 Mo. App. 492; Haxton v. Kansas City, 190 Mo. 53. (3)   In all the decisions which we have found in this State, the only reason given for cutting down a verdict is bias or passion on the part of the jury.   Rattan v. Railway, 120 Mo. App. 270; Goodloe v. Railway, 120 Mo. App. 194; Halley v. Light Co., 115 Mo. App. 652; Waechter v. Railroad, 113 Mo. App. 270; Snider v. Railroad, 108 Mo. App. 247; Longan v. Weltmer, 180 Mo. 322; Minter v. Bradstreet, 174 Mo. 444; Rice v. Railroad, 101 Mo. App. 459; Mitchell v. Railroad, 97 Mo. App. 411; McCloskey v. Pub. Co., 163 Mo. 22; Bertram v. Railroad, 154 Mo. 639; Latimer v. Railroad, 103 S. W. 1102; Kupke v. Transit Co., 122 Mo. App. 355; Lindsay v. Kansas City, 195 Mo. 166; Hitt v. Kansas City, 110 Mo. App. 713; Chadwick v. Transit Co., 195 Mo. 517; Haxton v. Kansas City, 190 Mo. 53; Rapp v. Transit Co., 190 Mo. 144; Dean v. Railway, 199 Mo. 386; Luckel v. Bldg. Co., 177 Mo. 608; Malloy v. Railway, 173 Mo. 75; Curtis v. McNair, 173 Mo. 270; Hanlon v. Railway, 104 Mo. 381; Fullerton v. Fordyce, 144 Mo. 533; Wood v. Railway, 181 Mo. 433; Furnish v. Railway, 102 Mo. 438; O'Gara v. Transit Co., — Mo, —, 103 S. W. 54.

BROADDUS, P. J.—This is an action for damages for an injury alleged to have been caused by defendant's negligence. The negligence alleged is, that about May 1, 1903, the plaintiff was a passenger on an east-bound car on defendant's street railway being operated on Fifteenth street; that as the car approached Campbell street he signalled the conductor that he wished to alight, and the conductor signalled to the gripman in charge to stop at said street; that as said car approached the usual stopping place to let off and take on passengers it began to slow down; that plaintiff stood up on the running-board and was holding on to the car ready to alight when the same should come to a stand; and that while plaintiff was thus standing the car was carelessly and suddenly started forward with increased speed giving it an unusual and violent jerk which resulted in throwing the plaintiff with great force upon the street whereby he was injured. The judgment was for plaintiff from which defendant appealed.

The plaintiff in his evidence testified on his direct examination as follows:

"As we approached Campbell street, I rapped on the glass at the conductor; he nodded like he knew what I wanted. There was a curve in the tracks there. After the car ran over the curve, she slowed up and kept on slowing up, and I thought she was going to stop, and after she run out about the edge of Campbell, I raised up and took hold of one of the posts and stepped down on the running board within eight or ten inches of the ground. I was standing on that and she slowed on until she passed Campbell; she didn't stop, though. She ran out about ten feet along there, I guess, anyway, and she gave a sudden revive with a jerk unexpected to me, and broke my handhold, and I went back on my head right side of the car. It just throwed me off the car— off the running-board I was standing on, and throwed

me off right down side of the car." Mrs. Gerish, wife of Dr. Gerish, testified as to the slowing down of the car at Campbell street as if it was going to stop, and that it started forward with a sudden and violent jerk which threw her against her husband, and that all the other passengers seemed to be thrown forward. Dr. Gerish saw plaintiff when he was thrown from the car and when he was lying on his back by the side of the car. He corroborates the plaintiff as to the slowing down of the car as it approached the crossing and the stopping place to let off and take on passengers and to the sudden lurch it gave forward. The defendant's evidence conflicted with that of plaintiff as to the manner in which he was injured.

Before the trial plaintiff's deposition had been taken in which he testified that the car had passed the stopping place at Campbell street before he got up, that it was near a hundred feet beyond the stopping place when he got up. And he used these words: "She slowed up like she was going to stop, then I jumped off." But in the same connection when asked: "You said you jumped off?" He answered: "No. I said I waited. She slowed up and I jumped up on my feet and hung to the rod; she slowed up, then revived with a quick jerk and I was off on my head. When I fell off I was seventy-five, eighty or one hundred feet east of Campbell street. The car slowed up and I was standing ready to step off thinking she would stop." At another place he stated that he did not jump off the car. It was for the jury to say whether they would believe or disbelieve the plaintiff as to the testimony he gave at the trial in view of his former testimony contained in the deposition. They were the sole judges of his credibility and of the weight to be given to his testimony.

The first five instructions given at the request of plaintiff we do not think subject to objection. The sixth is criticized by defendant for various reasons,

among which is that it submitted to the jury matters for damages not supported by evidence of future or permanent injuries. The plaintiff was sixty-eight years of age and his avocation was that of a barber. Dr. Hill lived near by plaintiff and knew him well. He testified that he was called shortly after plaintiff was hurt to attend him at which time he found a cut in the back of his head two or three inches long; that he was complaining of his back and one of his limbs paining him; that he was not fully conscious and suffering somewhat from concussion of the brain; that he also complained of pain from hernia which he treated, and that in about a year afterwards an operation was performed on him for that trouble and that he had entirely recovered from it. He also testified that plaintiff was suffering from neurasthenic or nervous exhaustion. He was asked if plaintiff's injuries were permanent to which he answered: "Well, that is a hard proposition. I don't know." Plaintiff testified that he had the hernia before the injury in a mild form, and that it was aggravated by the accident which necessitated the operation mentioned; that he was able before the injury to earn fifteen dollars a week in the shop as a barber, but since he is unable to do much work because his hand shakes; that there is "a kind of grinding" in the back of his head and neck, that penetrates to his temples and left eye; that when he stoops "everything is dizzy and blind, everything turns black until he straightens up, and stands awhile;" that he is nervous all over his system; that his back is aching all the time; that his kidneys are affected; that he has lost his spirit; that he has no sand or ambition; and that he has mostly lost his strength.

If plaintiff was entitled to belief he was permanently disabled and would certainly suffer in the future as the result of his injuries. It was not necessary to have a doctor to determine that fact. The defendant's

counsel has argued the question of plaintiff's permanent condition in a very satisfactory and convincing manner and had it been presented to the jury ought to have and no doubt would have produced a far different result from that obtained.

The verdict of the jury was for $4,000. Defendant contends that it is excessive. Appellate courts are slow to interfere with verdicts, on the ground that they are alleged to be excessive. The judge before whom the case was tried was better qualified than we are to say whether the verdict was excessive. It is only in cases where the trial judge has abused the sound discretion lodged in him under the law, that will authorize the interference of an appellate court. Finding no error the cause is affirmed. All concur.